JULIUS KAYSER, Appellant, v. ANNA M. ARNOLD et al., Respondent.

*Court of Appeals, April 14, 1891.*

Affirming 48 Hun, 620, mem.

*Contract. Specific performance.*—The court will not compel parties to sign a writing so incomplete and indefinite as to be incapable of enforcement when signed.

Appeal from a judgment of the general term of the supreme court, in the first judicial department, affirming a judgment entered upon the decision of the court at special term.

Action to compel a specific performance of an oral agreement to execute a written instrument granting to the plaintiff a license to use certain patents and inventions for the manufacture of gloves and mitts.

In 1884 the plaintiff, a glove manufacturer, wishing to procure machinery that would automatically join and sew the seams of gloves and mitts, applied to the defendant Satterlee Arnold to adapt to that purpose certain machines invented by him for seaming shirts and drawers.

The inventions of Mr. Arnold had been patented, but the

letters patent were at this time owned by his wife, Anna M. Arnold. At the suggestion of the plaintiff, Mr. Arnold, acting as agent for his wife, began to experiment, with the understanding that if he succeeded to the satisfaction of the plaintiff, the latter should acquire the exclusive right to use the improved machines, for the purpose aforesaid, upon terms to be thereafter adjusted. In April, 1885, when it was supposed that a machine had been made that would answer the purpose, a written instrument was prepared embodying the conditions agreed upon during previous negotiations and providing for a permanent arrangement between the parties. According to this proposed agreement, the plaintiff was to have the exclusive right to the letters patent already granted and to such as should be thereafter granted to either Arnold or his wife " for the purpose of making fabric gloves and mitts * * * having cut edges and of a weight not to exceed —— per yard," and in consideration thereof the plaintiff was to pay to said Anna M. Arnold a royalty of ten cents per dozen on gloves and two and one-half cents on mitts. Mrs. Arnold was also to furnish for the use of the plaintiff on or before January 6, 1886, 100 machines and attachments and as many more after that date as he should from time to time require, but they were to remain her property and were to be used only for the purpose aforesaid. The plaintiff was to deposit with her the sum of $10,000, " in four payments of $2,500 each," at specified times, " as security, without interest, * * * for said machines and to ensure due performance " of the agreement. The instrument embraced many details relating to the points already mentioned and concluded with an express covenant that it should continue until " the —— day of ——, 1902." It was verbally agreed that it should be signed whenever the plaintiff should express his satisfaction with the machine. In June, 1885, upon the statement of Mr. Arnold that he needed money to complete the machines, the plaintiff advanced $2,500 to Mrs. Arnold and received from her a receipt there-

for stating that said sum was received by her "with the understanding and agreement that the said twenty-five hundred dollars is for the first payment mentioned in an unsigned agreement, submitted by Anna M. Arnold to said Julius Kayser, which is to be fulfilled between the parties when the said Anna M. Arnold has furnished five to ten sewing machines satisfactory to said Julius Kayser and gloves satisfactory to said Julius Kayser have been made thereon. In case," as the receipt further stated, " the said machines should not prove to satisfaction of said Julius Kayser, or in case the unsigned agreement referred to above should not for any reason be consummated between the parties, the said twenty-five hundred dollars shall be returned by me to said Julius Kayser January 25, 1886, with interest."

Mr. Arnold continued his efforts to perfect the machine until March 22, 1886, when the plaintiff expressed himself as satisfied therewith, and it was agreed that the parties should meet on the 31st and sign the agreement. On the 24th, however, it was ascertained that the attachment for closing the ends of the fingers of the gloves was a failure, and that that part of the work would have to be done in the old way, but at an increased cost. Thereupon it was agreed between the plaintiff and Mr. Arnold that in view of the extra expense the royalties should be reduced, and that a clause should be inserted in the written agreement to that effect. They also agreed that it should be further modified so that the plaintiff, instead of taking one hundred machines and depositing $100 for each, should take only forty, but should deposit $150 for each, although if he finally took the other sixty the deposit should be averaged at $100 for each machine. These changes were never, in fact, inserted in the written instrument. It was still understood that the parties should sign the agreement on the 31st, but when that day came Arnold and his wife failed to appear, and soon after notified the plaintiff that they had parted with their rights to other parties, and asked him to make out his bill for what

they owed him. On the 2d of April, 1886, the firm of " A. G. Jennings & Son," without notice, so far as was alleged or approved, acquired by written assignment from Arnold and wife all the rights under said patents and inventions that the plaintiff had endeavored to obtain.

Upon the trial at special term these facts, among others, appeared and the court dismissed the complaint upon the ground that the plaintiff " saw fit to make his agreement dependent on the signing of the agreement, and as it was not signed, and as, in fact, no distinct terms were reached," he was without remedy in this action. The affirmance by the general term was upon the ground that the blank left in the unsigned instrument in relation to the weight of the gloves and mitts was not filled up.

*A. J. Dittenhoefer*, for appellant.

*Frank E. Blackwell*, for respondents Arnold.

*Sanford H. Stade*, for respondents Jennings.

VANN, J.—The plaintiff contends that it was the intention of the parties that the unsigned instrument should be considered simply as a memorial of terms already agreed upon, and not as the contract by which alone they were to be bound. This position finds some support in the early negotiations between the parties as well as in the first sentence of the receipt given by Mrs. Arnold, through the agency of her husband, for the sum advanced, as it provides that such money " is for the first payment mentioned in (the) unsigned agreement * * * which is to be fulfilled" when the plaintiff is satisfied. Standing by itself, this would indicate that the instrument was to be " fulfilled " in the sense of performed, or carried into effect, upon the happening of the contingency named. The remainder of the receipt, however, shows, as we think, that the parties intended to leave the mat-

ter open and neither to make a binding agreement then nor to treat anything said or done in the past as yet binding. This follows from the requirement to return the money on a day named in case the machines should not be satisfactory to the plaintiff, or if the unsigned agreement should not, for any reason, be consummated. This language overthrows the theory that any agreement, upon which the minds of the parties had finally met, was then in existence, for it assumes that neither party is yet bound to do anything except with reference to a return of the money advanced. All prior negotiations are presumed to be embraced in this receipt, which is a contract and is the only one relating to the subject that was ever signed by any of the parties. Renard *v.* Sampson, 12 N. Y. 561 ; Long *v.* N. Y. Central R. R. Co., 50 Id. 76.

Nearly a year after the date of the receipt two of the parties, without the assent of the third, so far as appears, agreed to modify the proposed agreement in two material respects, and that all three should sign it, as amended, on a day named. The modification was not reduced to writing, and the instrument, even at the time of the trial, was not completed or ready for the signatures of the parties. Taking the view most favorable to the plaintiff, this was simply an oral agreement to sign an instrument not yet in existence, because it had not been wholly written out. Even the written portion required rewriting in part in order to conform to the wishes of the parties.

It was virtually an oral agreement to prepare and sign a written agreement, not as evidence of an existing contract, but as an original contract. Whether specific performance of an oral agreement to execute a written instrument, in the nature of a license for sixteen years under letters patent, can be compelled by a court of equity, when such instrument is complete in all respects and in readiness to be signed, we shall not now consider, because that question is not presented by the record before us. Not only was the writing in question incomplete, because it did not contain all that the parties

had agreed should be inserted, but there were important blanks in the writing, with reference to which no agreement or understanding existed, and it had never been determined how they should be filled. The blanks existed not only in the paper, but also in the minds of the parties, which had never met upon the subject. No general right purported to be granted to the plaintiff, but only a special, though exclusive, right of user, dependent wholly upon the weight of the fabric per yard, yet the blank for this vital particular was left unfilled. There was no agreement, verbal or written, express or implied, as to what that blank should contain. There was no evidence from which the court, even if it were otherwise practicable, could have filled the blank. Every right of the plaintiff rested upon this unadjusted matter, which was left blank in both places where it occurred in the proposed agreement. Careful provision was made for a forfeiture of his right if the plaintiff used the machines in violation of the license, limited to an undetermined weight per yard of the material manufactured into gloves. The learned counsel for the plaintiff contends that the instrument, if signed, would be so construed as to mean "a reasonable weight per yard," but the parties did not agree to this, and, if they had, there is no evidence to enable the court to determine what a reasonable weight would be. No standard of comparison is disclosed. Far from agreeing upon that point, the parties did not even discuss it.

The proposed agreement was blank, also, as to its duration, to the extent at least of an entire year, a consideration of some importance when it is borne in mind that the amount of the royalties was guaranteed by the plaintiff to be not less than $6,000 a year.

We agree with the learned general term in saying " it is impossible to deduce from this unsigned instrument the terms of a contract sufficiently clear and definite to enable a court to enforce the specific performance thereof." We do not think that the parties should be compelled to sign a

writing so incomplete and indefinite as to be incapable of enforcement when signed.

The judgment should be affirmed, with costs to the defendants Jennings, but without costs to the defendants Arnold.

All concur.